| Item | Allenwood | Corrections Components of Community Corrections Centers |
|------|-----------|--------------------------------------------------------|
| 1. Employment of Inmates | On-site | Off-site |
| 2. Psychiatric Counselling | On-site | Off-site |
| 3. Religious Services | On-site | Off-site |
| 4. Preparation of Meals | On-site | Off-site |
| 5. Consumption of Meals | On-site | Generally off-site |
| 6. Expenses of meals borne by | U.S. | Resident |
| 7. Medical and dental expenses borne by | U.S. | Resident |
| 8. Medical and dental services performed | On-site | Off-site |
| 9. Operator of Facility | Bureau of Prisons | Private contractor |
| 10. Staffed by Bureau of Prisons Personnel | Yes | No |
| 11. Mandatory Training of Staff | Yes | No |
| 12. Ratio of inmates to staff (approximate) | 4 to 1 | 10 to 1 |
| 13. Eligibility of inmate for home confinement | No | Yes |
| 14. Monitoring of all non-legal telephone calls | Yes | No |
| 15. Maximum sentence of inmate | 10 years | 1 year |
| 16. Observation of each inmate by staff | Every 2 hours | Once a day |
| 17. May force be used to prevent escape? | Yes | No |
| 18. May deadly force be used to prevent escape? | Yes | No |
| 19. Confinement of inmate to the facility | Yes | No |
| 20. May inmate leave facility for funeral of family member or family emergency? | Yes with supervision | Yes |
| 21. May inmate leave facility for employment, to seek employment, meals, religious services? | No | Yes |
| 22. May staff recapture an escapee outside the facility? | Yes | No |
| 23. Transfer of inmate for serious disciplinary infraction from the facility to | Low security institution | Allenwood or other minimum security prison |
| 24. Recreation | On-site | Off-site |
| 25. Armory at facility? | Yes | No |
| 26. Staff trained in use of firearms | Yes | No |

Robert PULCINELLA and
Jeanann Dobrikovic

v.

RIDLEY TOWNSHIP and Ridley
Township Zoning Hearing
Board.

Civ. A. No. 93–283.

United States District Court,
E.D. Pennsylvania.

April 15, 1993.

Order Vacating Opinion and
Order July 26, 1993.

Clifford A. Boardman and Thomas H. Earle, Disabilities Law Project, Philadelphia, PA, for plaintiffs Robert W. Pulcinella and Jeanann Dobrikovic.

William F. Holsten, II, Holsten & White, Peter J. Rohana, Jr., Sol., Tp. of Ridley, Andrew J. Bellwoar, Media, PA, for defendant Ridley Tp.

William F. Holsten, II, Holsten & White, Michael P. Dignazio, Nelson & Dignazio, Peter J. Rohana, Jr., Tp. of Ridley, Andrew J. Bellwoar, Media, PA, for defendant Ridley Tp. Zoning Hearing Bd.

Harvey L. Handley, III, Housing and Civ. Enforcement Section, Civ. Rights Div., Dept. of Justice, Washington, DC, for movant U.S.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, Senior District Judge.

Plaintiffs seek a preliminary injunction to compel the Township of Ridley and the Ridley Township Zoning Hearing Board to grant plaintiffs' zoning application to permit plaintiffs to construct an addition to Jeanann Dobrikovic's single family dwelling house. The addition would provide wheelchair-accessible, separate first floor living accommodations for Robert Pulcinella, a handicapped person. Plaintiffs' applications for a variance and/or special exception from the zoning ordinance were denied. Under the Township Zoning Hearing Board's interpretation of the zoning ordinance, the proposed addition would leave a zero side yard clearance on the side of the lot adjoining the other half of the twin house of which the plaintiff's house was a half. The twin house shared a party wall along the lot line. The zoning ordinance required eight foot side yards on both sides of the addition. Plaintiffs' residence lot was a total of only twenty feet in width. Under the ordinance, therefore, any addition on the ground floor could be only four feet wide.

Plaintiffs contend that the refusal to grant a variance and/or special exception to the zoning ordinance and to preclude plaintiffs from building and occupying the addition vio-

lates the 1988 Amendments to the Fair Housing Act (FHAA), 42 U.S.C. § 3604(f). In substance, plaintiffs claim that they have submitted a plan that defendants must approve as a "reasonable accommodation" to Robert Pulcinella's handicap.

Plaintiffs seek a preliminary injunction which in effect would be a mandatory injunction requiring the township to permit the plaintiffs to construct the proposed addition. They contend that any delay will have severe adverse effects on Robert Pulcinella's health. The application for a variance and/or special exception was denied on November 5, 1992, and on reapplication again denied on January 13, 1993. On January 20, 1993, plaintiffs filed their complaint in this civil action and, on March 3, 1993, filed the present motion for a preliminary injunction. After a conference and a short period of time for discovery, an evidentiary hearing was held on March 24, 1993.

Plaintiffs availed themselves of none of the remedies and procedures provided by state law to review the decision of the Township Zoning Hearing Board. There is nothing in the record to suggest that utilizing state court procedures would be futile or unsuccessful or that state administrative and judicial decisions would ignore or incorrectly apply the FHAA to the facts of this case.[1] There is no doubt, however, that both the Fair Housing Act and the FHAA provide for a civil suit in federal court by aggrieved persons who claim a violation of the FHAA. Clearly there is federal subject-matter jurisdiction.

In 1988, the plaintiff, Robert Pulcinella, was involved in a motor vehicle accident that rendered him a paraplegic and permanently confined him to a wheelchair. At the time of the accident, he was residing in the house owned by his sister, the co-plaintiff, Jeanann Dobrikovic. He has continued to live in the house with his sister and her family since the time of the accident, except for extensive hospital confinements and several rather brief intervals when he stayed with a brother in Florida. Robert Pulcinella

has been paying some rent to his sister and is, in effect, both a boarder and a tenant in his sister's home.

The house is one-half of a twin house located at 717 Mount Vernon Avenue, Ridley Township, Pennsylvania. The house is located in a "Residential B" area under the Township Zoning Ordinance. The Residential B category was created by the zoning map for this area around 1970. Twin dwellings are not permitted in Residential B areas. The house owned by Jeanann Dobrikovic was erected prior to the time that the zoning map classified the area as Residential B. Thus, the dwelling continues to exist in the area as a valid non-conforming building. There exist numerous other twin dwelling houses within the immediate neighborhood located in the Residential B area that also remain as valid pre-existing, non-conforming buildings.

Mr. Pulcinella has extreme difficulty crawling up and down stairs. The only bathroom in the house is on the second floor. Mr. Pulcinella has been sleeping and living in the first floor living room portion of the house, with great inconvenience to himself and his sister and her family. Although he has been able to work as a lawn mower repairman in a shop owned by another relative of his, it has become increasingly difficult for him to enter and leave his residence as the house has no wheelchair ramp for entrance or exit, and in general is not internally "wheelchair accessible." There is convincing medical evidence that the conditions in the house, especially those requiring that he crawl to the second floor to carry out normal bodily functions, are seriously aggravating decubitus ulcers on his buttocks which have become so severe in the past as to require hospitalization and surgical correction by, among other procedures, skin grafting.

It is clear that Robert Pulcinella is, and has been since the date of the motor vehicle accident, a handicapped person within the definition of the FHAA. Section 3602(h), 42 United States Code, provides:

(h) "Handicap" means, with respect to a person—

---

1. In conference, plaintiffs' counsel conceded that one of the reasons for filing the present action in federal court was the realistic prospect of a more prompt final decision.

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) a record of having such an impairment, or

(3) being regarded as having such an impairment,

but such term does not include current, illegal use of or addiction to a controlled substance as defined in section 802 of Title 21.

42 U.S.C. § 3602(h).

Around the end of 1991, plaintiffs contacted an architect, Raymond Di Paola, who had extensive experience in designing wheelchair accessible homes and buildings. He designed for plaintiffs a one-story 704 square foot addition that would attach to the rear of the present house. It would contain a living room-bedroom, bath, exercise room and computer room, all accessible for wheelchair occupants in accordance with governmental and architectural building standards. It would almost double the ground floor area of the present house. An outside ramp for wheelchair exit and entrance was included in the plans. The proposed addition would have made the total building area 38% of the total lot size. The zoning ordinance allowed a maximum of building area to be no more than 30% of the lot size. Likewise, the proposed addition would come within 3 feet 11 inches of the lot's boundary line on the side opposite the adjoining twin dwelling. The application to the Ridley Zoning Hearing Board for a variance for excess building area and side-yard distance and a special exception to extend the "party wall line" for a zero side-yard distance along the adjoining half of the twin house was denied on or about April 11, 1992.

After the denial, Mr. Di Paola prepared a smaller sized addition, and resubmitted for plaintiffs a request for a variance and a special exception that still required a zero side yard on the side of the adjoining half of the twin house. According to Mr. Di Paola, the proposed exterior ramp and the new proposed addition would conform to all requirements of the Zoning Ordinance except in two respects: (1) the exterior ramp (for which Ridley Township Zoning Hearing Board granted a variance), and (2) the zero side yard requirement along the lot line of the adjoining half of the twin home. In other words, the revised plan would not cause the building to exceed 30% of the total lot size, had an adequate rear yard clearance, and the allowed minimum 8-foot side line clearance on the side away from the adjoining half of the twin home.

Except for granting the variance for the exterior ramp, the application was rejected because, as interpreted by the Zoning Hearing Board, a zero side yard could not be allowed as a special exception or variance along what would be an extension of the party wall in a "Residential B" area.[2] The obvious effect of the Zoning Hearing Board's decision would preclude the extension along the party wall lot line of any addition to a twin dwelling house that exists as a valid non-conforming building in a Residential B area. As previously noted because plaintiff's lot is only twenty feet wide, in order to allow eight feet of side yard, on both sides, any extension would have to be no more than four feet wide. The practical effect would be that no extension or addition to the house in the rear could be made for living quarters.

■■■ The failure to grant the variance effectively precludes plaintiffs from constructing an addition to the rear of the house along the party wall lot line of the twin dwelling house. This denial might well be held, under state law, to be error on the part of the municipal authorities. Although the granting of a variance allows fairly wide discretion to municipal zoning authorities, in

---

**2.** Section 15.502 of the Zoning Ordinance, upon which applicants sought a special exception, provides:

A dimensional non-conformity may be altered or expanded only if such alteration or expansion is in conformance with the provisions of this Ordinance, however, upon issuance of a special exception, additions or improvements may be made provided that such additional [sic] or improvement does not create new dimensional non-conformities or future increase existing dimensional non-conformities.

Township of Ridley, Delaware County, Pennsylvania, Zoning Ordinance § 15.502.

general where a party can show a hardship to the land, a variance must be granted. However, the federal district court lacks jurisdiction to sit as a court of appeals from a local zoning decision. It is, however, I think, quite significant that plaintiffs admittedly have never sought their clearly defined appellate state court rights to challenge the adverse decision by the Ridley Township Zoning Board. Plaintiffs seek mandatory injunctive relief that would order defendants to issue "the requested special exception/variance allowing the construction of the requested accessible improvements at 717 Mount Vernon Avenue, so as to allow plaintiff the use and full enjoyment of said premise," together with damages, including punitive damages for failure to grant "promptly" the application and attorney's fees. (Complaint at 11, ¶¶ 3–6). Plaintiffs sought a preliminary injunction with a proposed order that would direct Ridley Township and the Ridley Township Zoning Hearing Board "to issue a variance to the zoning code to permit the construction of the wheelchair accessible addition as proposed to the defendants at Variance Hearing 92–65 and 93–3, until completion of this litigation" and would prohibit interference with the construction and use of the addition. Finally, the proposed preliminary injunction seeks an injunction against the defendants "from failing to make reasonable accommodations in the Township's policies and practices with respect to the interpretation and application of its zoning code and the issuance of a variance for construction of a wheelchair accessible addition as proposed to the · defendants at Variance Hearing 92–65 and 93–3." (Pls.' Proposed Order Attached Memo. Supp. Mot. Prelim. Injunction at ·1–2).[3]

Prior to plaintiffs' motion for the grant of a preliminary injunction, the defendants, Ridley Township and Ridley Township Zoning Board, filed a motion to dismiss the complaint contending that the FHAA, 42 U.S.C.

§ 3604(f)(3)(A) & (B), upon which plaintiffs' federal claims are founded, are "inapplicable to the facts of this case." (Defs.' Memo. Supp. Mot. Dismiss, filed Doc. No. 7, at 2). In substance, defendants contend that the FHAA does not require a township zoning ordinance to provide for variances or special exceptions to make reasonable accommodations for a handicapped person who rents from an owner who owns only one single family dwelling. Section 3603(b), 42 United States Code, appears to exempt expressly and entirely from the operation of the statute, "any single family house sold or rented by an owner" unless such owner owns more than three such single dwelling houses at any one time, with certain other provisos that are clearly inapplicable to the facts of this case. 42 U.S.C. § 3603(b)(1).

Plaintiffs base their claims statutorily on "42 U.S.C. § 3613"[4] and on "28 [sic] U.S.C. § 1983." (Complaint, ¶ 5). They rely on the provisions of the FHAA, particularly 42 U.S.C. § 3604(f)(1), (2) and (3).

A violation of FHAA by a municipal zoning board would probably give rise to private cause of action under 42 U.S.C. § 1983. A denial of a zoning application in violation of FHAA would clearly constitute "state action," and would be a deprivation of rights and privilege secured by the laws of the United States. The present claims, even if proved, would not however, in my view, amount to a constitutional violation under 42 U.S.C. § 1983. As noted, they could amount to a statutory violation under 42 U.S.C. § 1983.

Handicapped persons, as defined under the FHAA and as applicable to the facts of this case, have not been, so far as I am aware, accorded that special type of classification that gives rise to a constitutionally protected class under the equal protection and/or due process clause of the Fourteenth Amendment

---

**3.** I did not find the original proposed order, or copy thereof, in the official file for Civil Action No. 93–283. However, a copy was located in the file maintained in my chambers. I will direct that a copy of this order be docketed and filed in conjunction with plaintiffs' memorandum in support of its motion for a preliminary injunction—filed Doc. No. 8.

**4.** Section 3613 permits a private party to bring a civil action for "an alleged discriminatory housing practice" (defined in 42 U.S.C. § 3602(f) as an act unlawful, inter alia, under section 3604 of the FHAA).

of the United States Constitution. The Supreme Court of the United States held in *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), that mentally retarded are not to be accorded special constitutional protection. The court opined that legislation that may discriminate against mentally retarded does not require, under the equal protection clause, "strict scrutiny" or "heightened scrutiny," but only a "rational relationship" analysis.[5] *Id.* at 444–446, 105 S.Ct. at 3256–3257. In so doing, the Supreme Court made clear that a variety of types of minority groups such as age, mental illness, physical disability, and infirmity are not quasi-suspect classes that require heightened scrutiny.

Fourth, if the large and amorphous class of the mentally retarded were deemed quasi-suspect for the reasons given by the Court of Appeals, it would be difficult to find a principled way to distinguish a variety of other groups who have perhaps immutable disabilities setting them off from others, who cannot themselves mandate the desired legislative responses, and who can claim some degree of prejudice from at least part of the public at large. One need mention in this respect only the aging, the disabled, the mentally ill, and the infirm. We are reluctant to set out on that course, and we decline to do so.

*Id.* at 445–446, 105 S.Ct. at 3257.

There is presently open for decision defendants' motion to dismiss and plaintiffs' motion for a preliminary injunction.[6]

At the hearing held on March 24, 1993, I questioned plaintiffs' counsel as to the constitutional foundation for their claim that the FHAA could impose requirements upon local zoning authorities to make "reasonable accommodations" for persons with physical handicaps. I afforded both sides a short period of time in which to submit briefs on

the issue. In a letter from plaintiffs' counsel, dated March 26, 1993, accompanying plaintiffs' post-hearing brief and submissions, counsel called my attention to 28 U.S.C. § 2403(a) which provides, in substance, for notice to the Attorney General and a right to be heard where the constitutionality of an Act of Congress affecting the public interest is drawn in question. Plaintiffs requested that I certify the issue to the Attorney General. Plaintiffs' counsel apparently also contacted the Attorney General, because I received a letter from the Housing and Civil Enforcement Section of the Civil Rights Division of the Department of Justice on behalf of the Attorney General stating that it was prepared, upon proper certification, to defend the constitutionality of the Act. ·

■ I believe plaintiffs' counsel misunderstood my concerns, although this is probably because I did not clearly articulate them. There is no question in my mind that the statute is constitutional on its face. Indeed, it could hardly be otherwise. The original Fair Housing Act of 1968 in its Declaration of Policy clearly states:

It is the policy of the United States to provide, *within constitutional limitations*, for fair housing throughout the United States.

42 U.S.C. § 3601 (emphasis added). The FHAA does not alter or change that declaration of policy. The original Fair Housing Act applied to "discrimination in the sale or rental of housing" on account of "race, color, religion, sex or national origin." 42 U.S.C. § 3604. As originally enacted, the dwellings so controlled involved only those that the federal government either owned, operated, financed, guaranteed financing or had some other similar direct federal involvement. 42 U.S.C. § 3603(a)(1)(A), (B), (C) and (D). However, after December 31, 1968, the Fair

---

5. The Supreme Court affirmed the lower court striking down the particular legislation involved because it did not pass the "rational relationship" test.

6. In defendants' motion to dismiss, they also claim that the complaint was not pleaded with the heightened specificity required of civil rights complaints citing *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 67 (3d Cir.

1986), and *United States v. Philadelphia*, 644 F.2d 187, 206 (3d Cir.1980). (Defs.' Memo. Supp. Mot. Dismiss at 5). Of course, the heightened specificity pleading "requirement" for civil rights complaints is no longer the law. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Housing Act, by its express terms, became applicable to all dwellings except those exempt by subsection (b) which provided (and still provides) in part, as follows:

(b) nothing in section 3604 of this title (other than subsection (c) [7]) shall apply to

(1) any single-family house sold or rented by an owner [with certain provisos].

42 U.S.C. § 3603(b).

Several of the earlier cases found the original Act constitutional on the basis of the thirteenth amendment. *Williams v. Matthews Co.*, 499 F.2d 819 (8th Cir.), *cert. denied,* 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115 (5th Cir.), *cert. denied,* 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59 (1973); *United States v. Hunter,* 459 F.2d 205 (4th Cir.), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972). The extension of the Fair Housing Act to protect handicapped persons logically could not come within the protection of the thirteenth amendment.

■ Congress is presumed to intend to pass only those statutes that, under the Constitution, it has the power to enact. Few recent cases have discussed the constitutional foundation for the FHAA protecting the physically disabled from purely private discrimination in the sale and rental of dwelling houses. Nevertheless, I conclude that the Interstate Commerce Clause (Article 1, Section 8 of the United States Constitution) provides a valid ground for such regulation. *See Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030, 1033–34 (11th Cir.1992). It may stretch the imagination somewhat to see how the grant or denial of plaintiffs' request for a variance or special exception to a local zoning ordinance to construct an addition to a private dwelling affects, in some way, interstate commerce. Nevertheless, if Congress so determines, such a determination must be sustained by the courts, "if there is any rational basis for such a finding." *Preseault v. ICC,* 494 U.S. 1, 17, 110 S.Ct. 914, 924, 108

L.Ed.2d 1 (1990) (quoting *Hodel v. Virginia Surface Mining & Recl. Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2358, 69 L.Ed.2d 1 (1981)).

■ The statute nowhere makes an express determination that discrimination against the handicapped in housing affects interstate commerce. I share the concerns of many persons that determining congressional intent by studying the legislative history and pronouncements of senators and congressmen during debate on particular legislation is at best an unsatisfactory method of statutory interpretation. *See, e.g., Conroy v. Aniskoff,* —— U.S. ——, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring). In this case, however, there is abundant evidence that Congress did conclude that the FHAA were properly grounded on Congress' authority to act pursuant to the Interstate Commerce Clause. (Pls.' Reply Memo. Supp. Mot. Prelim. Injunction, filed Doc. No. 19, at 2–7).[8] Because, Congress had the power to regulate activity that discriminates against handicapped individuals in housing, Congress likewise had the power, through proper legislation, to force local municipal zoning authorities and ordinances to comply with the statute. Where there is power to act under the Interstate Commerce Clause, Congress may validly regulate most municipal activities. *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 557, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985) (squarely overruling *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)). In the view of some, if not all of the dissenting justices, under *Garcia,* the federal government by Act of Congress has almost limitless power to control activities of state governments (including, of course, municipalities), provided only that the legislation can be found to affect, in some way, interstate commerce. *See Garcia,* 469 U.S. at 567, 105 S.Ct. at 1026 (Powell, J., dissenting).

■ In any event, I will assume for purposes of deciding the present issues before

---

**7.** Subsection (c) of section 3604 prohibits discriminatory advertising, etc., with respect to the sale or rental of a dwelling. Advertising of property for sale or rental is not involved in the present case.

**8.** I recognize that defendants strenuously dispute this contention.

me that Congress has the constitutional power, under the Interstate Commerce Clause, to compel local zoning ordinances and local officials and zoning boards to make "reasonable accommodations" for dwelling houses for handicapped persons. The question still remains, however, whether the statute, which does not appear to be ambiguous as to the issues in this case, imposes upon local zoning authorities any duty to alter zoning ordinances and regulations or to provide reasonable accommodations to a handicapped person living in a private single family dwelling. This is solely a matter of statutory interpretation.

Nowhere in either the Fair Housing Act or the FHAA is there any mention or direct reference to local zoning ordinances. No express duties are imposed upon municipalities to conform the local zoning ordinances and regulations to comply with any portion of the Fair Housing Act or its amendments. The wording of the Act and the Amendments throughout consistently refer to the sale and rental or advertising and showing for sale and rental of dwelling houses, not to decisions of local zoning authorities.

It seems clear that Jeanann Dobrikovic as the owner of the property would herself not be subject to the strictures of the Fair Housing Act or the FHAA, nor would Robert Pulcinella be entitled to any of the protections of the statute if this were litigation between Mrs. Dobrikovic as the owner and Mr. Pulcinella as the renter. Under the original Fair Housing Act, there was an exemption that excluded entirely from coverage the sale or rental of a single family house where the private individual owner did not own more than three single family houses at any one time. 42 U.S.C. § 3603(b). This exemption was in no way altered or re-worded by the FHAA and remains in full force today as follows:

## EXEMPTIONS

(b) Nothing in section 3604 of this title (other than subsection (c)) shall apply to

(1) any single family house sold or rented by an owner provided that such private individual owner does not own more than three such single-family houses at any one time [with further provisos not relevant to the issues in this case].

*Id.* at § 3603(b). Although there is no evidence directly on point, plaintiffs have never contended that Mrs. Dobrikovic, a private individual, ever owned more than three single-family houses at any one time.[9] In light of the single-family house exemption, I think plaintiffs must concede that if Robert Pulcinella was seeking to compel Mrs. Dobrikovic to allow him, as a handicapped person, to make reasonable modifications to the premises that he was occupying, the exemption in the Act would foreclose him from any relief under the statute.

The Fair Housing Act, as originally enacted, made unlawful discrimination in the sale or rental of dwellings subject to the Act "because of race, color, religion, sex or national origin." *Id.* at § 3604(a). Though the FHAA expanded the protected classes to include, inter alia, handicapped persons, it preserved the exemptions set forth in section 3603(b) of the Fair Housing Act. The FHAA also maintained all of the protections of the original Act and added a lengthy subsection (f) that was expressly applicable only to handicapped persons. In addition to the usual definitions of discrimination, the FHAA included in subsection (f)(3) the following as constituting "discrimination":

(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such [handicapped] person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modi-

9. Should plaintiffs have any evidence that Mrs. Dobrikovic, in fact, did own more than three single family houses at any time relevant to this case, plaintiffs may submit such evidence by affidavit or request a further evidentiary hearing.

fication, reasonable wear and tear excepted; [10]

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. *Id.* at § 3604(f)(3)(A) & (B).

I think that a proper reading of subsection (f)(3)(B) refers only to a refusal by landlords to make reasonable accommodations in rules, practices, et cetera. Obviously, it applies only to those single family dwelling houses covered by the FHAA. Landlords, such as Mrs. Dobrikovic, under the exemption of section 3603(b) are not required to make any accommodation, reasonable or otherwise. The statute by its wording exempts "any single-family house" that otherwise qualifies for the exemption. Because 717 Mount Vernon Avenue, Ridley Township, Pennsylvania, is a single family house that does qualify under the Act for the exemption, the house is entirely exempt from the strictures of the FHAA so far as being required to provide reasonable accommodations to a handicapped person. Neither the house nor the owner is subject to FHAA. It appears illogical to contend, as do the plaintiffs, that nevertheless the Township Zoning Ordinance must allow a variance so that an addition to the house may be built to accommodate Mr. Pulcinella's handicap.

Aside from the statutory exemption of section 3603(b), there is nothing in the FHAA that expressly requires a municipality to take any action relevant to the issues in this case. If Congress had intended that municipalities conform their zoning ordinances and regulations to make reasonable accommodations for handicapped persons, it could, should, and would have done so. In the sections immedi-

ately following the above-quoted subsections (A) and (B), FHAA expressly provides for state and "units of local general government" incorporating into their laws requirements for review and approval of the "design and construction of covered multifamily dwellings." *Id.* § 3604(f)(5). Those sections further provide that the "Secretary. [of Housing and Urban Development] shall encourage, *but may not require, States and units of local government* to include in their existing procedures for the review and approval of newly constructed covered multifamily dwellings...." *Id.* at § 3604(f)(5)(C) (emphasis added). Certainly if Congress was capable of specifying the extent of the duties and obligations of municipalities and, in fact, did so as provided in various subsections of section 3604(f), Congress could and would have specified any duty with regard to local zoning requirements.

A few noteworthy general observations should be reiterated. First, as relevant to any of the present issues, the wording of the statutes appear to be neither excessively complex, vague, ambiguous, or unclear, absent some attempt to expand meaning beyond the plain content of the language. Second, by the statutes' own wording, the Fair Housing Act and the FHAA were intended to provide fair housing throughout the United States, *id.* at § 3602, by prohibiting discrimination in the sale and rental of housing, *id.* at § 3603(a), against defined categories of persons including handicapped persons, *id.* at § 3604(f).[11] Third, the statutes expressly exempt a single-family house rented by an owner provided that the owner did not at any one time own more than three single-family houses. *Id.* at § 3603(b)(1). Finally, the statutes do not by their express words impose any

---

**10.** Note that the statute expressly refers only to a restoration of the interior and makes no direct reference to any external alteration or addition to an existing dwelling. It would appear that a landlord could lawfully refuse to allow any external alterations or additions, even if the tenant would willingly restore the property to its original condition upon termination of the tenancy. Perhaps Congress thought any external alteration or addition would be per se an "unreasonable modification," or perhaps considered the likelihood of external alterations or modifications so

remote as to be insignificant, if Congress considered the matter at all.

**11.** The Zoning Hearing Board's determination to deny plaintiffs' application for a variance and/or special exception was based on its interpretation of its existing zoning ordinance. It neither discriminated against nor discriminated in favor of the applicants, utilizing the normal meaning of discrimination. Plaintiffs' contentions of discrimination are based on the statutory definitions, contained in subsection (f)(3)(A) and (B).

obligation upon municipalities to alter or make exceptions to existing zoning ordinances and regulations.

I can find no valid basis to issue a preliminary injunction that would mandate that the Ridley Township officials grant plaintiffs' applications for a special exception and/or variance to allow plaintiffs to construct a substantial addition to the ground floor living quarters for Robert Pulcinella, a handicapped person.

For purposes of deciding the present motions, I have not considered the difficult, fact-specific issues as to establishing the requisites for "reasonable accommodations," and the respective burdens of proof. I note, however, that plaintiffs' arguments would seem to suggest that a handicapped person has the right to make any existing house wheelchair accessible, even if, to do so, requires a substantial addition to the dwelling house that would clearly extend beyond and violate existing applicable zoning limitations. This argument appears more expansive than the requirement of subsection (f)(3)(B) for "reasonable accommodations ... when such accommodations may be necessary to afford such person *equal opportunity* to use and enjoy a dwelling." *Id.* at § 3604(f)(3)(B) (emphasis added).

■■■■■ The grant or denial of a preliminary injunction is normally a matter of judicial discretion. The party or parties seeking preliminary injunctive relief must establish a reasonable probability of success. Plaintiffs have not succeeded in establishing this essential element. Plaintiffs have, at best, established that Robert Pulcinella is a handicapped person entitled to the protections of the FHAA. They have established that Mr. Pulcinella cannot reasonably continue to dwell in the house of his sister, Mrs. Dobrikovic, absent a substantial addition to the first floor of the house to make it wheelchair accessible and usable by Mr. Pulcinella. The evidence establishes that the local zoning ordinance, as interpreted by the Zoning Hearing Board, does not permit the house to be increased by an addition consistent with plaintiffs' plans. The local zoning ordinance contains no provision that imposes any special requirements or conditions on plaintiffs' applications by reason of Mr. Pulcinella being a handicapped person. There is no evidence of any intentional or invidious discrimination by the local zoning officials because Mr. Pulcinella is handicapped.[12]

■■■■■ A preliminary injunction is ordinarily granted for the purpose of maintaining the status quo during the litigation. In this case the status quo as to Mr. Pulcinella's living accommodations has remained substantially static since 1988 when the motorcycle accident rendered him a handicapped person. In addition, plaintiffs must normally demonstrate that irreparable harm will result if the preliminary relief is not granted. *A.L.K. Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 763 (3d Cir.1971). This is distinct from irreparable harm on final determination on the merits, because if a violation of the FHAA is finally proved, the statute contemplates injunctive relief without any necessity of establishing, separate and apart from the violation, irreparable harm. Here plaintiffs clearly seek to alter the status quo and have asserted that if the preliminary mandatory injunctive relief which they request is granted, they will proceed immediately to construct the addition and assume the risk of eventually losing the case.[13]

■■■■■ In appropriate situations, a district court has the authority to direct mandatory preliminary injunctive relief. *United States v. Price,* 688 F.2d 204, 210–212 (3d Cir.1982). However, a plaintiff's burden to establish the traditional elements for a preliminary injunction is heightened and "particularly heavy" when, as in the present case, a plaintiff seeks mandatory preliminary relief.

---

**12.** Plaintiffs contend that there is evidence of a discriminatory intent and effect, but they do not seek a preliminary injunction on that basis. (Pls.' Memo. Supp. Mot. Prelim. Injunction, filed Doc. No. 8, at 15–16 n. 10).

**13.** Under such a scenario, if ultimately unsuccessful on the merits, the only apparent way to undo the harm caused by improvidently granting a preliminary injunction would be to enter another mandatory order directing that the addition be demolished—a disconcerting concept, at best.

*Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir.1980).

The FHAA also explicitly provides that a court may grant a temporary or permanent injunction and order affirmative action when appropriate, "if the court finds that a discriminatory housing practice has occurred or is about to occur." 42 U.S.C. § 3613(c)(1). This section clearly authorizes the relief plaintiffs seek in their motion for a preliminary injunction, provided there is a finding of a discriminatory housing practice having occurred or about to occur within the meaning of the statute. On the basis of the evidence presented to date along with the legal arguments made by counsel, I am unable to conclude (a) that plaintiffs have shown a reasonable probability of success on the merits, or (b) that a discriminatory housing practice has occurred or is about to occur in violation of the FHAA.

Most, if not all, of the cases that plaintiffs cite in support of their position, *i.e.,* cases where municipalities were held to have violated the Fair Housing Act or the FHAA, are distinguishable from the present case because they involved situations where municipal action imposed special or specific requirements that hindered the protected classes from obtaining housing. For example, *Horizon House v. Township of Upper Southampton,* 804 F.Supp. 683 (E.D.Pa.1992), involved an ordinance that placed special requirements applicable to group homes for handicapped persons that did not apply to other households. The ordinance was held to be facially invalid. *The Devereaux Foundation, Inc. v. O'Donnell,* No. CIV.A.89–6134, 1990 WL 132406 (E.D.Pa. Sept. 6, 1990), concerned an ordinance that plaintiffs contended discriminatorily impacted against handicapped persons living under a Community Living Arrangement (CLA). Because there were issues of fact as to whether the ordinance in issue unlawfully discriminated against handicapped persons living in CLAs, cross motions for summary judgment were denied.

Congress apparently intended to impose restrictions upon local zoning ordinances that placed special requirements upon zoning permits obtained by handicapped and other protected persons.

> The committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the *application of special requirements* through land use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.
>
> ....
>
> These new subsections would also apply to state or local land use and health and safety laws, regulations, practices or decisions which discriminate against individuals with handicaps. While state and local governments have authority to protect safety and health, and to regulate the use of land, that authority has sometimes been used to restrict the ability of the individuals with handicaps to live in communities. This has been accomplished by such means as the enactment or imposition of health, safety or land use requirements on congregate living arrangements among non-related persons with disabilities. *Since these requirements are not imposed on families in groups of similar size or of other unrelated people, these requirements have the effect of discriminating against persons with disabilities.*

H.R.Rep. No. 711, 100th Cong., 2d Sess. at 24 (1988), *reprinted in* 1988 U.S.Code Cong. and Admin.News 2173, 2185 (emphasis added).

As Judge McGlynn noted in *Devereaux Foundation, Inc.,* supra:

> Clearly, however, zoning restrictions are not per se invalid under the FHAA. Rather, the legislative history indicates that the FHAA is intended to allow reasonable governmental limitations to continue so long as they are imposed on all groups and do not discriminate on the basis of a handicap.

*Devereaux Foundation, Inc.,* 1990 WL 132406, at *6. The zoning requirements of the defendants do not single out Mr. Pulcinella (or any other handicapped person or classes of persons), nor do they impose special conditions or requirements different

from those imposed on all others. The zoning ordinance, as interpreted by the defendant Zoning Hearing Board would prohibit all persons, irrespective of whether or not they are handicapped, from building the substantial extension or addition to the dwelling house that plaintiffs seek to compel the Township to allow. Plaintiffs' contention is that the defendants must make and apply special rules so that plaintiffs may construct and occupy an addition and extension to an existing non-conforming house, a right to which no one else would be entitled.

Aside from the statutory exemption issue of section 3603(b), I recognize that there is substantial case law that holds or opines that local zoning laws and municipal zoning decisions must make "reasonable accommodation" for handicapped persons. These cases, for the most part, fall into categories that impose special conditions upon persons who are handicapped. Such special conditions may not be established under the guise of heightened health and safety concerns for the handicapped. *Horizon House, supra,* (citing *Marbrunak, Inc. v. City of Stow,* No. 5:90 CV 0925 (N.D.Ohio July 9, 1990)). Claims of general community welfare may not be utilized to spread group living homes (CLAs) farther apart than other dwelling houses having comparable numbers of inhabitants. *Ardmore, Inc. v. City of Akron, Ohio,* No. CIV.A.90–1083, 1990 WL 385236 (N.D.Ohio Aug. 2, 1990); *Oxford House v. Township of Cherry Hill,* 799 F.Supp. 450 (D.N.J.1992); *Horizon House, supra.*

The decided cases merely recognize the classic type of discrimination. Ordinances that by their express wording place conditions and burdens upon the handicapped that are not applicable to the non-handicapped are held invalid and discriminatory. As stated by Judge Reed in *Horizon House* 804 F.Supp. at 693:

The FHAA makes it unlawful to discriminate against a person based on handicap with respect to housing. 42 U.S.C. § 3604(f)(2). An ordinance that was a discriminatory classification is unlawful in all but rare circumstances. A violation of the FHAA can be established by demonstrating that the challenged statute is [sic] dis-

criminates against the handicap on its face and serves no legitimate government interest. A violation of the FHAA may also be established by establishing a "disparate treatment," which occurs when "the defendant was motivated by an intent to discriminate because of a handicap" or by demonstrating a "disparate impact" which requires plaintiff to prove, "absent a discriminatory intent on the part of the defendant, the effects of defendant's actions were nonetheless discriminatory."

*Horizon House,* 804 F.Supp. at 693.

In the present case, the relevant zoning ordinance and regulations make no distinction between handicapped persons and those who are not handicapped. Plaintiffs concede for purposes of the present motions that they have not established a discriminatory intent or motive. Apparently, plaintiffs contend that there is a discriminatory impact because the practical effect will be that Mr. Pulcinella cannot continue to live in the community of his choice, notwithstanding that he has been living there for most of the time since 1988. There has been no action taken by the defendants that will legally require him to move or legally prohibit his continued residence at the dwelling house. There is no showing that any person, not so handicapped, would have been granted a permit to add an addition unto a residence under similar circumstances. In other words, there has been no discrimination against plaintiffs. Plaintiffs are really contending that there should be discrimination in favor of their application as a "reasonable accommodation." As I have previously indicated, I do not think that the FHAA, no matter how broadly interpreted, should under the facts thus far established, require the defendants to grant the zoning application of the plaintiffs.

There are some cases that have held or opined that zoning ordinances and regulations must affirmatively make provision to grant requests for handicapped persons that would not be granted to non-handicapped persons, because of an obligation to make "reasonable accommodation." An example is *Sievert v. City of Mill Valley,* No. 90–1302, 1992 WL 500514 1992 U.S. Dist. LEXIS 14727 (N.D.Cal. Sept. 8, 1992). Neverthe-

less, summary judgment was entered for the defendant municipality because plaintiff was eventually granted a permit to build an extension unto the dwelling house.

My final conclusion is that the motion for a preliminary injunction must be denied. I find this result unfortunate in light of the fact that the evidence indicates that the proposed addition to the house would not adversely affect the neighborhood and the township's denial of the proposed addition is based upon an interpretation of the zoning code that may not be a correct interpretation under state law. Further, this outcome is particularly unfortunate because there were at least suggestions by the defendants that some compromise (which might lead to an agreeable solution allowing the plaintiffs to construct an addition to the house, though not the exact addition presently proposed) might be possible. Plaintiffs, however, took a "take-it-or-leave-it" position (which they clearly had the right to do) based on their contention that they were entitled to damages, including punitive damages for the delay, plus attorney's fees,[14] and that the Township must approve their plans, exactly as submitted and without any change, as a "reasonable accommodation." Meanwhile, Mr. Pulcinella is left with few options.

 The motion to dismiss will be denied. Although, I do not believe that the Township need amend its ordinance or provide any different procedures because Mr. Pulcinella is handicapped, plaintiffs contend that they can establish actual discriminatory intent. If they are able to do this upon a full trial, it is possible that plaintiffs may be successful, even if the statutory exemption of section 3603(b) applies. At this point, at least, I am not prepared to find that there are no set of facts that could be proved under the allegations of the complaint that would entitle plaintiffs to relief or damages.

Because I believe that a prompt resolution of the motion for a preliminary injunction is required in this case, in order to afford the parties the right to appellate review, I have not been able to analyze in detail, nor to discuss herein, all of the cases that have interpreted the FHAA.

## ORDER

Upon consideration of the defendants' motion to dismiss the complaint, and plaintiffs' motion for a preliminary injunction, after an evidentiary hearing, and upon consideration of the legal briefs and arguments presented, it is

ORDERED as follows:

1. Defendants' motion to dismiss the complaint (filed Doc. No. 7) is DENIED.

2. Plaintiffs' motion for a preliminary injunction (filed Doc. No. 8) is DENIED.

3. Plaintiffs' proposed preliminary injunction order shall be filed and docketed of record as part of plaintiffs' motion for a preliminary injunction (filed Doc. No. 8).

4. All discovery shall be completed by May 31, 1993, unless an appeal from the order denying plaintiff's motion for a preliminary injunction is timely filed, in which event all discovery shall be completed within two calendar months after final decision on any appeal.

5. Pretrial memoranda shall be filed by all parties on or before June 8, 1993, unless an appeal is taken, in which case pretrial memoranda should be filed within fourteen days after the discovery completion date as specified in paragraph 4 above.

6. The case shall be listed for trial on June 14, 1993, at 9:30 A.M., unless an appeal is taken, in which event the trial will be scheduled during the month following the date for filing pretrial memoranda as specified in paragraph 5 above.

7. In the event that this matter proceed to trial, pursuant to Federal Rule of Civil Procedure 65, the hearing on the application for a preliminary injunction heretofore held

---

14. Section 3613(c)(2) of 42 U.S.Code provides, inter alia, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." Once again, it is possible that this litigation may eventually center around attorney's fees.

**218**

on March 24, 1993, shall be consolidated with the trial on the merits.

## ORDER

WHEREFORE, upon consideration of the parties' Joint Stipulation for Dismissal of Plaintiffs' Complaint and their Request for the Court to vacate its April 15, 1993 Opinion and Order Denying Plaintiffs' Motion for Preliminary Injunctive Relief and Defendants' Motion to Dismiss Plaintiffs' Complaint it is hereby

ORDERED that Plaintiffs' Complaint is dismissed with prejudice and the Court's April 15, 1993 Opinion and Order is vacated this 26th day of July, 1993.